C. J. Driever, Complainant, v. Arthur K. Shephard et al., Defendants.

In re Foreman State Trust & Savings Bank, Receiver, for the Approval of its Current and Final Accounts.

Appeal of Edward M. Bertha, Individually and as Trustee, Appellant.

Gen. No. 34,297.

Heard in the first division of this court for the first district at the April term, 1930. Opinion filed December 1, 1930.

SONNENSCHEIN, BERKSON, LAUTMANN & LEVINSON, for appellant; ROGER S. BLOCH and HORACE A. YOUNG, of counsel.

ROBERT N. ERSKINE, for appellee.

MR. JUSTICE McSURELY delivered the opinion of the court.

Edward M. Bertha (hereafter called defendant) appeals from an order approving the receiver's final report entered in a partial foreclosure proceeding of a first trust deed, in which C. J. Driever was complainant. Defendant is the holder of a second trust deed and bonds and challenges four payments aggregating $14,707.22 made by the receiver, Foreman State Trust & Savings Bank, to be applied on the principal, interest and income tax payments, pursuant to the terms of the first trust deed.

The first trust deed secured an issue of bonds aggregating $175,000 and provided that the holder of any matured bond and interest coupon could upon certain defaults institute a partial foreclosure; provided, however, that such partial foreclosure should operate to subordinate the lien of the trust deed as to the bonds which were the subject matter of the partial foreclosure to the lien of all the other bonds secured by this first trust deed, and that any sale of the mortgaged premises under the partial foreclosure should be subject to the continuing lien of the trust deed for the security of the other bonds. September 7, 1928, complainant filed his bill for a partial foreclosure. October 1, 1928, Foreman State Trust & Savings Bank was appointed receiver and from the rents and profits it made the payments which defendant questions.

The first trust deed conveyed the rents, issues and profits as additional security and authorized the trustee to take possession of the property, collect the rents and apply the same specifically upon the bonds and coupons secured by the trust deed. Upon the filing of any bill to foreclose, the court might appoint a receiver to collect such rents and could authorize the receiver to apply the net amount in his hands in payment of any or all the following items: "amount due upon the indebtedness secured thereby," . . . "or (4) . . . any other lien or charge upon said premises that may be or become superior to the lien of this Indenture." There was a further provision that there should be paid out of the rents or proceeds of any sale the principal bonds and interest not subordinated and that such covenants should be binding upon the grantors' assigns.

The decree of sale entered October 4, 1929, found complainant had a first lien on the mortgaged premises to secure the sum of $13,066.97; that such lien was subject to the continuing and prior lien rights of the holders of the remaining bonds of the same issue and

that the defendant Bertha had a second lien subordinate to that of the complainant and also subordinate to the continuing lien of the first trust deed securing the remaining bonds. November 27, 1929, and before sale, the receiver filed his report showing the payments which are challenged. December 3, 1929, sale was had and complainant purchased for $9,600, subject to the first mortgage, exclusive of complainant's rights, and a deficiency decree was entered in favor of complainant for $4,519.16, which was subsequently satisfied. January 20, 1930, the receiver's final report was filed, defendant's objections thereto were overruled and the report was confirmed.

Defendant contends in this court that the receiver was not authorized in the general order of appointment to make the payments in question without a specific and definite order from the court, after due notice to all parties concerned. While it is the safer practice for a receiver to protect himself by specific orders for expenditures, yet, where his report of such expenditures has been finally ratified and approved by the court, after notice to all parties interested, the failure to obtain specific orders authorizing payments is not vitally important. This is especially true where the receiver shows to the court that the sums thus expended without specific directions were in the interest of the receivership estate and beneficial to it. This has been the general practice in our courts for many years. The court's order approving the final report was a ratification of the acts of the receiver. *Atwood v. Knowlson*, 91 Ill. App. 265; *Brown v. Hazelhurst*, 54 Md. 26; *Forest Lake Cemetery v. Baker*, 113 Md. 529; *Thompson v. Phenix Ins. Co.*, 136 U. S. 287; and High on Receivers (4th ed.) p. 945, where the author says that where a receiver shows an outlay to have been necessary and such as would have been authorized by the court had application been previously

made, he will be reimbursed for such outlay, as if previous authority had been given.

However, it is not conceded that the original order of appointment is not sufficiently broad to justify the payments made. The order recites that the receiver should take immediate possession of the premises, rent the same "and to make monthly payments of principal under Article 9 of the Trust Deed being foreclosed herein until the further order of this court." Article 9 in the trust deed referred to is, in substance, an agreement by the mortgagor to deposit with Cochran & McCluer Company in Chicago certain specified amounts at specified times and that such sums so deposited shall be applied "towards the payment of instalments of principal and interest as they severally mature." There was also a similar provision with reference to the income taxes levied on such bonds.

When complainant filed his bill he subordinated his lien to the rights of the other bondholders under the trust deed and they were still entitled to have these provisions of the trust deed enforced. In this respect the receiver stood in the place of the trustee in the trust deed, and in order to protect the estate should have made the payments provided by such trust deed. It would be anomalous to permit the receiver in a partial foreclosure of a trust deed to act in opposition to the terms of the trust deed securing the rights of the other bondholders who were not parties to the foreclosure and whose lien is conceded to be prior to the lien of the foreclosing complainant. If the provisions of Article 9 of the trust deed, providing for the deposit of the income and rent to take care of principal bonds and interest as they matured were not carried out, the rights of the holders of these superior bonds would be seriously affected.

Defendant suggests that the order of appointment authorized the receiver only to make "monthly payments of principal" and not of any interest. Con-

sidering the terms and purposes of the trust deed, it is unreasonable to suppose that the court intended by this order to provide for the payment of principal bonds only and not of interest, which would result in guarding against a default for nonpayment of principal but not against default for nonpayment of interest.

Article 9, in essence, was a provision for a sinking fund with which to pay all current obligations under the trust deed as they matured. It was the duty of the receiver to protect and preserve the property in its possession and to make such payments as would, as far as possible, prevent the enforcement of prior liens. The duty to make such payments has been frequently recognized in our courts. *Boyd v. Magill,* 100 Ill. App. 316; *Elliott v. Magnus,* 74 Ill. App. 436; *Atwood v. Knowlson,* 91 Ill. App. 265; *Ortengren v. Rice,* 104 Ill. App. 428. These cases recognize the principle that the receiver should make such payments accruing under a prior mortgage so as to prevent default of the superior claim and lien. This is the basis of the usual order authorizing receivers to pay the current taxes on the premises involved. If they were not paid, a superior lien would be definitely established and a decree would be unavailing. The receiver should, as far as possible, see that the property is carried to the judicial sale free and clear of all claims, the enforcement of which would prejudice the parties to the suit.

Defendant asserts repeatedly that the first mortgagee is not a party to the pending proceeding. This is not accurate, for the Chicago Title & Trust Company, the trustee in the first trust deed, was made a party defendant and appeared and filed its answer, asserting the prior rights of its trust deed.

Complainant makes the point that the defendant Bertha consented to the entry of the original order appointing a receiver and made no objection thereto nor objected at any stage of the proceedings until the receiver's report was filed. Defendant must have

known that under the order of appointment the receiver would not only pay the prior instalments of principal and of the interest but made no objections to this order.

Furthermore, on February 13, 1929, defendant entered his appearance and filed his answer wherein he asked that a receiver be appointed to have possession and control of the property together with the rents and that such receiver should have "full power and authority to pay all interest on prior encumbrances accruing at any time prior to the expiration of the period of redemption." The receiver was, therefore, doing the very thing that the defendant himself asked should be done. This can only be construed as consent upon his part to have the receiver make these payments. Under such circumstances defendant should not be heard to complain that such payments were made. *First Nat. Bank of Joliet v. Illinois Steel Co.,* 174 Ill. 140; *Roby v. Title Guarantee & Trust Co.,* 166 Ill. 336; *Smith v. Kimball,* 128 Ill. 583; *Reardon v. Youngquist,* 189 Ill. App. 3.

Counsel for defendant have cited a large number of cases, none of which is particularly applicable to the instant case. Indeed, a partial foreclosure, like that now before us, is somewhat unusual. It may be conceded that in the ordinary foreclosure proceedings the rents collected by the receiver before sale are applied to any deficiency after sale and any overplus belongs to the owner of the equity of redemption. The cases cited by defendant involve situations either where the mortgage debt was discharged by the sale or there was a dispute between some subsequent owner of the equity of redemption and the deficiency judgment creditor. We repeat that in the instant case, when the receiver had made the payments in question, no sale had been held and the receiver was doing nothing more than protecting and preserving the

property by following the directions contained in his order of appointment.

There is no importance in defendant's suggestion that by the appointment of the receiver defendant perfected an equitable lien on the rents and profits. Such lien was subordinated to the lien rights of the bondholders under the first trust deed. Complainant was acting under the terms of the first trust deed and could not seek the benefit of such terms for himself alone in derogation of and contrary to the terms of the trust deed which were for the benefit of the other bondholders. Complainant, however, subordinated his right to those of the other bondholders.

Complaint is made that the decree provides that it is subject to the continuing lien of the prior trust deed for the remaining 314 bonds secured thereby and that this could not be if any of these bonds had been paid by the receiver. The lien of the prior trust deed could only be security for such bonds with interest as were unpaid.

The payments made by the receiver were for the benefit not only of the complainant but also of the defendant. Defendant could have bought the property in at the sale and had the right to redeem, in which case these payments would have inured to his benefit. We do not see that the defendant has been harmed. Concededly, his lien is inferior to that of the first trust deed, and if the indebtedness secured thereby has been reduced—as evidently it has been by these payments—this is to the benefit of the defendant by reducing the prior incumbrance.

We have only briefly referred to the points made and cases cited by defendant, but have set forth the affirmative reasons for our conclusion. We are of the opinion that the order approving the receiver's report was proper and it is affirmed.

*Affirmed.*

MATCHETT, P. J., and O'CONNOR, J., concur.