*In re* MARRIAGE OF JAMIE R. VIEHMAN, Petitioner-Appellee, and
RUSSEL R. VIEHMAN, Respondent-Appellant.

Fifth District    No. 80-228

Opinion filed November 26, 1980.

Storment, Stegmeyer & Read, of Belleville (P. Michael Read, of counsel), for
appellant.

Sam S. Pessin, of Law Offices of Pessin, Baird & Wells, of Belleville, for
appellee.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

Respondent, Russel R. Viehman, appeals from the order of the St.
Clair circuit court with respect to the division of marital property and the
award to petitioner of maintenance of $750 per month for five years in a
proceeding for dissolution of marriage. The respondent also appeals from
an order finding that he was delinquent in payment of court-ordered
temporary maintenance.

At the time of the final hearing on the question of property division
and maintenance, the parties, Jamie R. Viehman and Russel R. Viehman,
were 46 and 51 years of age respectively. Respondent has worked for

Guth Lighting for 25 years. His salary at time of trial was $45,000 per year as general manager. The net annual salary was $30,000, and in addition respondent has received bonuses of between $5,000 and $8,000 per year for the past several years. Further, he received $2,800 per year in dividends from stock of General Signal, the parent company of Guth Lighting. The value of the General Signal stock at the time of trial was $96,000; however, respondent had obtained a loan of $37,000 in the past in order to exercise certain of his stock options. The parties own approximately $2,000 worth of stock in other corporations, and respondent testified that he was entitled to a retirement plan valued at $2,370.

The marital home was purchased for $37,000 and has been appraised at $105,000. The home is subject to a mortgage on which there is an unpaid balance of $14,000. Respondent has purchased a 10-percent interest in a land trust for $10,000. This interest was valued at $12,000 at the time of trial. Respondent is expected to receive a Federal income tax refund of $1,950. The parties' personal assets consist of household furniture estimated to be worth $6,000 and a family automobile, a 1978 Chevrolet, valued at $4,850, which is subject to a loan in the amount of $4,295. The cash values of respondent's life insurance policies are negligible due to the fact that he had taken out loans against them to pay for the educational expenses of the children. According to the evidence, the total marital debts are approximately $78,000, consisting of various loans and retail credit purchases.

Respondent has moved into an apartment and pays $330 per month apartment rent and $57 per month for leased furniture. He estimated his living expenses as being $1,181 per month and states that he has tried to meet the monthly loan and charge payments as they become due.

The parties have three children, Carl, 18, Tracy, 21, and Eric, 23. All three of the children are in college, and Eric is self-supporting.

Petitioner has a high school education and has been married to respondent for 27 years. The evidence established that for the past 5½ years, petitioner had been employed as a property manager for a real estate firm. Her duties include showing apartments to prospective tenants, collection of rents, and supervision of maintenance of the building. Because the job is not full time, petitioner's earnings varied between $299 and $500 per month. She has been attempting to negotiate a sale of the marital home for $85,000 and has been required to expend money to get the house in salable condition. Petitioner stated that she plans to move to Texas, although she has not secured employment there nor is she familiar with the living expenses in Texas. According to petitioner, she had paid some of the expenses for the children's college during the previous year. She pays automobile insurance of $758 for six months, and the children are covered by the policy. She stated that automobile insurance for

herself would be $115 for six months. Petitioner agreed that the marital debts totaled approximately $77,000. She testified that as a result of her petition for temporary support and maintenance, respondent was ordered by the court to pay her approximately $1,100 per month and that as of October 18, 1979, there would be a four-month delinquency in compliance with that order. She thought that respondent may have paid a couple of the utility bills as well as the mortgage and automobile payments.

On October 31, 1979, the court entered an order awarding petitioner the marital home, the household furniture, the 1978 Chevrolet, and all stocks with the exception of the General Signal stock. Petitioner was ordered to pay any remaining mortgage or loan payments, taxes, and insurance on the foregoing items. The court further awarded petitioner $1,700 maintenance per month for herself and for the educational expenses of the two youngest children. The maintenance was to be reduced by 29.4 percent upon the undergraduate graduation or marriage of each child and by 41.2 percent five years from the date of the order or upon petitioner's remarriage.

The court awarded respondent all the General Signal stock, the beneficial interest in a land trust, any income tax refund which might be due or might have been received, the retirement fund, and all life insurance policies. Respondent was ordered to repay all loans which might be outstanding against any of the foregoing, and each party was ordered to pay his or her attorney's fees.

On November 19, 1979, respondent filed a post-trial motion; and on March 13, 1980, the court entered an order modifying its original order regarding the division of marital property and maintenance. The court found the value of the marital home to be between $71,000 and $91,000, less capital gains taxes and selling expenses, and the value of the retirement fund at $4,740. The court found respondent's reasonable needs to be $1,500 per month and petitioner's reasonable needs to be $700 per month. The court found that the petitioner is without sufficient income to meet her needs and acquire sufficient education and job skills to find appropriate employment to allow her, during the remainder of her life, to maintain the standard of living established during a marriage of 27 years. The original order was modified to award petitioner $750 per month maintenance for five years. On April 3, 1980, respondent filed a second post-trial motion, on this occasion requesting that the order of March 13, 1980, the modified judgment order, be amended or in the alternative that a new trial be granted. On April 28, 1980, the court denied the post-trial motion of April 3, 1980, and on May 9, 1980, the respondent filed a notice of appeal.

The petitioner initially contends that the trial court has no authority to

hear successive post-trial motions each filed within 30 days after the denial of the previous issue. She urges that since the notice of appeal in this cause was filed more than 30 days after the court's ruling on respondent's first post-trial motion, this court is without jurisdiction to consider this appeal.

Section 50(5) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 50(5)) provides:

> "The court may in its discretion, before final order or judgment, set aside any default, and may on motion filed within 30 days after entry thereof set aside any final order or judgment upon any terms and conditions that shall be reasonable."

Section 68.3 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 68.3) provides in part:

> "In all cases tried without a jury any party may, within 30 days after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief."

Illinois reviewing courts on numerous occasions have held that trial courts have no authority to hear successive post-judgment motions filed by the same party, each filed within 30 days after denial of the previous one. (*Deckard v. Joiner* (1970), 44 Ill. 2d 412, 255 N.E.2d 900, *cert. denied* (1970), 400 U.S. 941, 27 L. Ed. 2d 244, 91 S. Ct. 232; *Underwood v. Yellow Cab. Co.* (1971), 131 Ill. App. 2d 449, 268 N.E.2d 254; *In re Estate of Schwarz* (1965), 63 Ill. App. 2d 456, 212 N.E.2d 329.) These courts held that the language of sections 50(5) and 68.3 of the Civil Practice Act contemplates only one such motion. (*Underwood; Schwarz.*) The rationale underlying these decisions is that if such motions were to be allowed, the judicial goals of finality of judgments and orderly appellate review would be frustrated. *Underwood; Schwarz.*

Under Supreme Court Rule 303(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 303(a)), in order to perfect a timely appeal a party must file a notice of appeal within 30 days from the entry of a final order. As stated by the supreme court in *Deckard*:

> "[To allow a second motion] would not only violate the spirit of our rule [303(a)], which contemplates the prompt and orderly prosecution of an appeal, but would render it a nullity. As occurred in this case, any party could defeat the rule and delay appeal merely by filing successive and repetitious motions to vacate. When confronted with a similar circumstance in *Martin v. Masini*, 90 Ill. App. 348, the court made the following comment to which we fully subscribe: 'We do not believe that the filing of a second motion or petition attacking the original order may be utilized to extend

the time on appeal. [Citation.] The last motion or petition contained nothing that was not in the first motion or could not have been included therein. Neither motion purported to be under Section 72, nor did they contain the required allegations for relief under this section. They were merely attempts to have the trial court review its own orders after thirty days, which it cannot do. Such motions or petitions may not be utilized to toll the time for appeal. *In re Estate of Schwarz* 63 Ill. App. 2d 456, 460, 212 N.E.2d 329 (1965).' * * *." *Deckard*, 44 Ill. 2d 412, 418-19, 255 N.E.2d 900, 903-04.

The appellate court upheld the validity of a second post-judgment motion in *Bernitt v. Brown* (1973), 16 Ill. App. 3d 774, 306 N.E.2d 513. The *Bernitt* court stated that it was predisposed to agree with the proposition that a party is limited to one such motion. However, based upon language contained in *Fultz v. Haugan* (1971), 49 Ill. 2d 131, 305 N.E.2d 873, the *Bernitt* court believed that the supreme court had clearly indicated its intention that successive post-judgment motions be permitted.

In *Fultz* the supreme court affirmed the denial of a second motion to vacate which was filed more than 30 days after the order denying the first motion to vacate. The statement in *Fultz* which was relied upon by the *Bernitt* court reads as follows:

"After the order of April 24 denying the motion to vacate plaintiff had 30 days within which to file a notice of appeal (Rule 303(a)) or *to file a motion attacking the order of April 24* or to obtain an extension of time within which to do so (Section 68.3.)" (Emphasis added.) *Fultz*, 49 Ill. 2d 131, 135, 305 N.E.2d 873, 875-76.

We do not agree with the *Bernitt* court that the statement in *Fultz* was meant to change the long-standing rule that only one section 68.3 motion by each party is permitted in light of the supreme court's holding on this issue in *Deckard*. Since *Bernitt*, two appellate court cases considering this issue have followed the holding and rationale of *Deckard: Handing v. Power Ford, Inc.* (1978), 67 Ill. App. 3d 466, 385 N.E.2d 95; and *Rose v. Centralia Township High School District #200* (1978), 59 Ill. App. 3d 606, 375 N.E.2d 1039. We agree with the holdings and rationale of *Handing* and *Rose*. Notwithstanding the *Bernitt* interpretation of *Fultz*, the *Deckard* decision sets forth the law of this State. *Drafz v. Parke, Davis & Co.* (1980), 80 Ill. App. 3d 540, 400 N.E.2d 515.

However, the facts of the case at bar differ substantially from those in *Deckard, Handing* and *Rose*. Here, the court granted respondent substantial relief as requested in the first post-trial motion. The last motion was directed at the second, or modified, order and did, in fact, contain matters that were not in the first motion and could not have been in-

cluded therein as alluded to in *Deckard*. Respondent could not have sought the same relief in his second motion as he did in the first, because the second motion was directed at new provisions contained in the modified order of the court which had not been entered when his first motion was filed.

■■ For the foregoing reasons, we conclude that respondent was entitled to file the second post-trial motion and that his appeal to this court was timely filed.

On May 18, 1979, the court entered an order for temporary support and maintenance. The order required respondent to pay the mortgage payments, the electric, gas, water, sewer, and garbage hauling payments, and monthly telephone bills not in excess of $50. Respondent was to pay petitioner $360 per month for food and supermarket bills; $50 per month recreation; $25 per month for minor household repair; $25 per month for cleaning, laundry, and miscellaneous bills; $50 per month for gasoline; and $186.75 for petitioner's automobile payment. Petitioner was to furnish respondent proof of the supermarket bills. On June 12, 1979, petitioner filed a motion for citation for contempt. After a hearing on June 29, 1979, the court found respondent not to be in contempt, "as the obligations of respondent exceed his income and the emergency expenditure of $210 on the behalf of the parties' son Eric would have brought respondent into substantial compliance with the order of May 18."

Subsequently, as part of the hearing on the division of marital property, the court heard evidence of delinquent temporary support payments. On March 13, 1980, the court found that respondent owed petitioner $2,142 for delinquent support payments for the period of May 18, 1979, to October 3, 1979, under the prior order of the court and entered judgment in favor of petitioner and against respondent for such amount. On April 3, 1980, the respondent filed a post-trial motion from this order. This motion was separate from the motion filed the same date requesting the amendment of the modified order dividing the parties' property and awarding petitioner maintenance. On April 28, 1980, the post-trial motion pertaining to the order of delinquent support payments was denied. The notice of appeal of May 9, 1980, recites that it is from "the order dated April 28, 1980, denying the Post-Trial Motion filed by respondent, said order affirming the judgment of the Court entered on March 13, 1980." Although the notice of appeal does not recite that appeal was being taken from both March 13, 1980, orders, we shall consider on appeal the issues raised by the denial of both motions.

The order of temporary maintenance was entered on May 18, 1979; therefore, the parties were litigating an alleged delinquency covering the period from June 18 through October 3, 1979. The parties stipulated that respondent had paid automobile loan payments and home mortgage

payments totalling $1,904. Respondent errs in his brief when he contends that the total amount of payments he was ordered to make under the temporary order of support was $746.75 per month and not $1,100 as claimed by petitioner. The order assigns value to many specific items that respondent was ordered to pay. Those items total $721.75. Respondent was also ordered to pay the mortgage payments of $290. Therefore, the record establishes that respondent was to pay $1,011.75 per month plus electric, gas, and garbage hauling expenses.

Petitioner urges that the delinquency order of the court is amply supported by the evidence; however, from an examination of the record, it is impossible to ascertain the basis upon which the trial court arrived at its finding that respondent was indebted to petitioner in the sum of $2,142 for delinquent support payments for the period of May 18, 1979, to October 3, 1979, under the prior order of the court. In fact, petitioner states in her brief that it "appeared" respondent was credited for mortgage and car payments totaling $476 per month for four months, being $1,904, leaving a balance of $2,486 due on unpaid temporary support, which petitioner's attorney had suggested was $4,400. Petitioner's brief concludes that "[a]pparently the court gave the respondent benefit of other deductions and entered judgment for the sum of $2,142."

■■ We conclude, therefore, that it is impossible to ascertain the basis for the judgment awarded petitioner by the court. Unless the award of the trial court is based on competent evidence and does not require speculation by the court of appeal as to the basis of such award, it may not be affirmed on appeal. (Cf. Brongel v. Brongel (1977), 48 Ill. App. 3d 27, 362 N.E.2d 750; Croft v. Lamkin (1969), 112 Ill. App. 2d 321, 251 N.E.2d 88.) Therefore, that portion of the March 13, 1980, judgment of the trial court awarding petitioner judgment against respondent in the sum of $2,142 is against the manifest weight of the evidence and should be reversed and remanded to the trial court for a determination of the precise amount of any such delinquency.

Respondent further contends on appeal that the order of the trial court relative to the division of the property of the parties and the payment of maintenance to petitioner by respondent is against the manifest weight of the evidence.

Respondent first urges that the unequal division of the marital property violates the rules of equity and should be reversed. The court awarded petitioner approximately $85,000 in net assets while the net value of the assets assigned to respondent was approximately $60,000. Respondent concedes that an equal division of marital property is not required; however, he contends that there is no justification for the division made or for the maintenance he was ordered to pay petitioner. We do not agree. The order of the court contained a detailed analysis of

the economic status backgrounds and anticipated future plans of the parties; therefore, there is ample evidence to support the court's division of the marital property and award of maintenance.

From our examination of the record, we conclude that the order of the trial court dividing the property of the parties and awarding petitioner $750 per month maintenance is not against the manifest weight of the evidence.

Finding that oral argument would be of no assistance to the court in reaching its conclusion and that there is no substantial question presented, we have taken the case under advisement without oral argument pursuant to Supreme Court Rule 352(a) (Ill. Rev. Stat. 1979, ch. 110A, par. 352(a)).

For the foregoing reasons, we reverse that portion of the March 13, 1980, order of the circuit court of St. Clair County entering judgment for petitioner and against respondent for $2,142 and remand the same for further proceedings not inconsistent with this opinion. We affirm that portion of the order entered by the court on such date dividing the property of the parties and ordering maintenance payments.

Affirmed in part; reversed and remanded in part.

JONES, P. J., and SPOMER, J., concur.