CLARENCE JEANBLANC, as Guardian of the Estate of LeRoy Jeanblanc, Plaintiff-Appellant, v. DALE MELLOTT, Defendant-Appellee.
Second District No. 2—86—0126

Opinion filed February 23, 1987.

David W. Badger, of Badger & Badger, of Dixon, and Robert H. Reck, of Mendota, for appellant.

Maurice J. Barry, of Law Offices of Henry Sherwood Dixon, of Dixon, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Plaintiff, Clarence Jeanblanc, guardian of the estate of LeRoy Jeanblanc (LeRoy), brought suit against the defendant, Dale Mellott, to recover compensation for the use of LeRoy's farmland by the defendant. Following a bench trial, judgment was entered in favor of the plaintiff and against the defendant in the amount of $17,400. Defendant filed a post-trial motion in which he requested that the trial court grant a setoff against the judgment in the amount of the balance due on a promissory note made by LeRoy to the defendant. The setoff was granted. Plaintiff then filed a post-trial motion seeking correction of the amount of the setoff based upon the defense of usury and the erroneous computation of the interest owed. The trial court denied plaintiff's supplemental post-trial motion, and he appeals.

On November 24, 1984, the plaintiff, as guardian of the estate of

LeRoy Jeanblanc, filed suit against the defendant to recover compensation for the use and occupancy by the defendant of certain farmland in which LeRoy had a life estate. The defendant denied the allegations in the complaint, but did not allege any affirmative defenses, nor did he file a counterclaim. During the trial, both plaintiff and defendant introduced into evidence a promissory note in the amount of $10,000 made by LeRoy and payable to the defendant.

On August 1, 1985, the trial judge issued a memorandum decision and order awarding the plaintiff the sum of $17,400. Defendant's attorney wrote a letter to the trial judge, pointing out that the decision made no reference to the setoff for the note. Plaintiff's attorney also wrote to the trial judge asking for clarification of the same point. In his letter of August 12, 1985, the trial judge stated as follows:

> "In regard to the amount due on the note as a set off [*sic*], I will need either a stipulation from you as to interest and principal due or a proveup. Since the note was admitted into evidence, any questions as to its genuiness [*sic*] or validity would be *res judicata.*"

On August 27, 1985, defendant filed a post-trial motion which requested, *inter alia,* that the trial court reduce the amount of the judgment awarded to plaintiff by the balance due on the promissory note executed by LeRoy to the defendant, plus any interest to date. On September 3, 1985, plaintiff filed an answer to defendant's post-trial motion in which the promissory note was discussed, but no objection to the rate of interest was raised.

On October 11, 1985, the trial court conducted a hearing on defendant's post-trial motion. During the course of the hearing, the following colloquy occurred:

> "THE COURT: Do you want another hearing on the question of the note, Mr. Reck? Do you want to go through another trial or what do you want to do with the note?
>
> MR. RECK [plaintiff's attorney]: No, but I'm assuming the note is perfectly valid but shouldn't the Court look at the terms on it of a fifth year as well as face value?
>
> THE COURT: Well, you know what the cardinal rule is in the practice of law, and that also includes judges, is that you never assume anything. Now, it seems to me—
>
> MR. RECK: I don't think I'm assuming anything.
>
> THE COURT: Well, I can't assume payments were made and credited against the note if there is no evidence to that. The only thing I can go on is the basis of the evidence submitted. Now, it seems to me that you fellows have a choice here.

The reason I didn't rule on the note was because it wasn't a part of the pleadings. Okay. There was no request for a setoff in the pleadings.

MR. RECK: I know this.

THE COURT: We can go through the trial again, have the court reporter type the transcript as far as the introduction. I can take judicial notice of the fact that this note was admitted into evidence, it's a proper document, and rule on the note in a separate proceeding or you can agree if you wish for the purposes of the note issue at lease [*sic*] that I can rule on that issue. It's up to you. I mean, do you want to argue this note issue at a separate hearing and then I can incorporate by reference all the testimony that's already introduced because it's a matter of record?

MR. RECK: No. I assume, reading the Court's memorandum opinion—I have here before me—that the memorandum decision and order, that the note was considered in the decision and—

THE COURT: No, the note wasn't considered. The note was considered in the decision only to the effect as to proof, and I thought I made that clear as to the fact that the note was evidence of a payment of cash rent in the year—on December 1st of 1982. Now, that's the only notation, as I recall, on the note and this note was dated July 27, 1977.

MR. RECK: '77. Right.

THE COURT: So, I mean, if he would have—if you want to argue that point if he would have paid a fifth of that note a year—I mean, obviously he would have had it paid off before he made the payments on December 1st of 1982 because a fifth of $10,000.00 is $2,000.00. That would be '78, '79, '80, '81, '82. Right there is $10,000.00.

MR. RECK: I'm fully in accord with the Court's thinking. The only thing I was suggesting in my argument was that because there was, in fact, evidence of a payment made in '82 doesn't necessarily prove that there weren't other payments made.

THE COURT: No. I know that. What I am saying to you is that there is one of two ways to do this. Since it was not made part of the original pleadings, since the pleadings, I don't think, were amended subsequent after all the evidence was introduced—

MR. RECK: No. There were no amendments.

THE COURT: —there was nothing in either the complaint or the answer relative to this issue in terms of a request of the Court to determine the amount of the—what was due and owing on the note, I didn't consider it. Now, I considered the note only as to the effect it had on establishing that a cash rent payment was made in the year 1982. Then I considered—and that was introduced by you on direct examination.

MR. RECK: Absolutely.

THE COURT: As long as those cash receipts for those years—that's how I arrived at my opinion so that still left at issue the question of the note indebtedness as far as the balance is concerned.

MR. RECK: Agreed.

MR. DIXON [defendant's attorney]: Your Honor has correctly analyzed the situation. We, the Defendant, would ask that the Court determine the validity of the remainder due on the payment of the note in this proceeding rather than the necessity of further proceeding on the subject.

THE COURT: What about you, Mr. Reck?

MR. RECK: I'm in accord with that, your Honor."

Thereafter, the order was entered on October 16, 1985, allowing a setoff in the amount of $16,902 against the plaintiff's judgment and denying the other relief sought by the defendant.

On November 7, 1985, plaintiff filed a post-trial motion alleging that the interest rate on the note was usurious and that pursuant to Section 6 of "An Act in relation to the role of interest ***" (interest statute) (Ill. Rev. Stat. 1979, ch. 74, par. 6 (now Ill. Rev. Stat. 1985, ch. 17, par. 6413)), plaintiff was entitled to an amount equal to twice the total amount of interest determined by the loan or contract or actually paid, which would result in a credit to plaintiff of $8500 together with the $3500 already paid on the note. The motion requested that the judgment for plaintiff be increased to $26,100. Defendant filed a motion to strike plaintiff's post-trial motion on the basis that the motion sought pretrial interest not provided for by statute, and that the time for filing post-trial motions had expired. Defendant also sought attorney fees and expenses for allegations made in plaintiff's post-trial motion without reasonable cause.

A hearing was held on the two motions on November 26, 1985. During the hearing the following colloquy concerning the October 11, 1985, hearing took place:

"THE COURT: At that time [the October 11, 1985 hearing] I directed a question to both of you. I said, 'Do you want a re-

hearing, a re-trial, as far as the note is concerned, keeping in mind that you have had a judicial finding based upon your introduction of the note into evidence at the original trial, that the note was valid?'

MR. RECK: Not—there is a difference, your Honor, between validity and introducing the note. The note speaks for itself.

THE COURT: Am I correct at this time? You are bound by your evidence, Mr. Reck. You are the one that put it into evidence.

MR. RECK: I stand by the note in the sense that it speaks for itself. If it shows on its face that it is usurious we are presumed to know the law.

THE COURT: Am I correct so far in terms of what occurred?

MR. RECK: I was trying to speak, but I remember what occurred at that point. The thing I remember most, your Honor—

THE COURT: No. Let me just—please. This is important because it involves the integrity of the Court. It involves the integrity of both of the attorneys in this matter. If agreements can't be honored by the Court—in the presence of the Court we might as well pack it up and go home. Is it or is it not true that you agreed that it would not be necessary for an additional hearing as far as that note was concerned; that the only remaining issue was the computation of the interest on the note, and I said to both of you that I can do this myself or you can both sit down with your figures and you had the calculators. I don't even remember who had it. I left the courtroom at that time and you then—

MR. RECK: This is true.

THE COURT: —recalculated the note and an amount was agreed on in terms of the calculation and order was entered pursuant to that agreement. Is that true or is it not true?

MR. RECK: That is true, your Honor."

However, plaintiff's attorney continued to dispute whether he had actually agreed to validity of the note. On that basis, the trial court granted plaintiff leave to file an amended post-trial motion setting forth verified allegations as to why the order of October 16, 1985, should not be enforced.

On December 6, 1985, plaintiff filed a supplemental post-trial motion. The motion stated that it was made to raise the defense of usury pursuant to statute, and that the defense was raised against defend-

ant's claim of setoff first raised in defendant's post-trial motion. The motion further stated that it was error to compute the interest due on the note as compounded since the note did not specifically provide for compounded interest. The motion was supported by the affidavit of plaintiff's counsel.

On January 9, 1986, a hearing was held on plaintiff's supplemental post-trial motion. Plaintiff's attorney argued that section 7 of the interest statute (Ill. Rev. Stat. 1985, ch. 17, par. 6415) requires that the defense of usury be imposed by a written pleading, and the first opportunity he had to raise the defense was following the trial court's order of October 16, 1985, permitting the setoff of the note. Plaintiff's attorney stated as follows:

> "My motion being made within 30 days after the Court's modified order of October 16th was certainly timely. It was the first post-trial motion of the Plaintiff, and it was made at the first time he had an opportunity to defend against the usuary [sic] question because the usuary [sic] question cannot arise until the hearing on the Defendant's post-trial motion and then when the Court allowed it I should have the opportunity to point out the fact that the note was usurious."

After reviewing the transcript of the October 11, 1985, hearing, the trial court stated as follows:

> "It seems to me at that time [the October 11, 1985 hearing] that I brought it to the attention of both of you that you could have a separate hearing as far as the validity of the note if you wanted to have one. You determined at that time that you didn't want that. That the only determination for the Court was—to be made was the balance due on the note. That was agreed. Then you proceeded to work out the balance due and the affidavit is correct that I did approach the—your table and made a suggestion as to how you would do that. You came to an agreement and you left this courtroom.
>
> If you [sic] accepted your argument, Mr. Reck, this case would go on forever. I'd have another decision and there would be something else that would be erroneous. My feeling is or my belief is that I'm sure I know what the intent of that discussion was. I'm very glad that my court reporter typed it up so that I can refresh my recollection.
>
> MR. RECK: May I make an observation?
> THE COURT: You may as soon as I'm done.
> MR. RECK: All right. Thank you.
> THE COURT: Just let me finish please. I believe at that time

that it was clear that no further proceedings were to be conducted by the Court as to the validity of the note. If the question of whatever defenses were available is an afterthought, I think those defenses should have been raised at that time and a separate hearing requested. So, I believe that whatever objection was—you—could have voiced as far as the note was concerned in terms of its validity or in terms of whatever defenses would be available to you were waived as a result of your agreement and failure to proceed with the further hearing so that's going to be my ruling."

The trial court denied plaintiff's supplemental post-trial motion, finding *inter alia*, that plaintiff had waived his right to the usury defense by not putting forth the defense at the October 11, 1985, hearing and had not put forth the necessary allegations for relief under section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401). This appeal followed.

Plaintiff's first issue on appeal raises a question as to this court's jurisdiction to entertain this appeal. Plaintiff does not dispute that he did not comply with the requirements of section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401). He argues instead that he was not required to comply with section 2—1401 because his post-trial motion was timely.

Section 2—1203 of the Code of Civil Procedure provides in pertinent part as follows:

"In all cases tried without a jury, any party may, within 30 days after the entry of the judgment or within any further time the court may allow within the 30 days of any extensions thereof, file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief." Ill. Rev. Stat. 1985, ch. 110, par. 2—1203.

The chronology of events in the case before us is as follows:

| | |
|---|---|
| August 1, 1985 | Judgment entered for plaintiff. |
| August 27, 1985 | Defendant files post-trial motion requesting setoff for the promissory note. |
| September 3, 1985 | Plaintiff files answer to defendant's post-trial motion in which he discusses credit for payments on the note but not the interest rate. |
| October 11, 1985 | Hearing held on defendant's post-trial motion. |

| | |
|---|---|
| October 16, 1985 | Order entered modifying judgment and granting the setoff. |
| November 7, 1985 | Plaintiff files post-trial motion attacking the October 16, 1985 order. |
| November 26, 1985 | Hearing on plaintiff's post-trial motion. |
| December 6, 1985 | Plaintiff files supplemental post-trial motion. |
| January 9, 1986 | Hearing held on plaintiff's supplemental post-trial motion. |
| January 13, 1986 | Order entered denying plaintiff's supplemental post-trial motion. |
| February 6, 1986 | Plaintiff files notice of appeal. |

A second post-trial motion, filed more than 30 days after judgment, but within 30 days of the first motion, that only repeats what was in the first motion or raises points that could have been raised the first time does not extend the time for appeal. (*Sears v. Sears* (1981), 85 Ill. 2d. 253, 258; see *Deckard v. Joiner* (1970), 44 Ill. 2d 412, *cert. denied* (1970), 400 U.S. 941, 27 L. Ed. 2d 244, 91 S. Ct. 232.) In both *Sears* and *Deckard*, the second post-trial motion was filed by the same party who filed the first such motion, and the second motion contained the same or similar allegations as the first motion.

In the case before us, however, the second post-trial motion was filed by the plaintiff, while the first was filed by the defendant. The plaintiff's post-trial motion concerned itself with the alleged usurious interest rate charged on the note, which had been allowed as a setoff against plaintiff's judgment as a result of the first post-trial motion, filed by defendant. In the case of *In re Marriage of Viehman* (1980), 91 Ill. App. 3d 315, the husband filed a post-trial motion within 30 days of the entry of the judgment, and as a result of the motion, the trial court modified the judgment. The husband then filed a second post-trial motion requesting that the modified judgment be amended or, in the alternative, that a new trial be granted. The trial court denied the second post-trial motion, and the husband appealed. On appeal, the court found that the appeal from the denial of the second post-trial motion was timely, because the last motion was directed to the second or modified order and did, in fact, contain certain matters that were not in the first motion and could not have been included therein. The husband could not have sought the same relief in his second motion as he did in his first, because the second motion was di-

rected at new provisions contained in the modified order of the court which had not been entered when his first motion was filed. 91 Ill. App. 3d 315, 319-20.

■ Likewise in the case before us, it is clear that plaintiff's posttrial motion was filed directly as a result of the granting of the relief requested in defendant's post-trial motion. Thus, plaintiff could not have filed his motion prior to the granting of that relief by the trial court. Therefore, we find that plaintiff's post-trial motion was timely, and we have jurisdiction to entertain this appeal.

■ Plaintiff contends that the interest rate of 9% charged on the promissory note was in violation of the usury statute (then Ill. Rev. Stat. 1977, ch. 74, par. 4) since the maximum lawful interest rate which could be contracted to be paid in 1977 when the note was entered into was 8%. Plaintiff contends further that, in the event plaintiff's defense of usury was proved, the statute provides that he would be entitled to an "amount equal to twice the total of all interest, discount and charges determined by the loan contract or paid by the obligor, whichever is greater, plus such reasonable attorney fees and court costs as may be assessed by a court against the lender." Ill. Rev. Stat. 1985, ch. 17, par. 6413.

Defendant contends that plaintiff has waived the defense of usury. Defendant argues that the various colloquies between court and counsel for both parties at the October 11, 1985, and subsequent hearings, demonstrated that the October 16, 1985, order was agreed to by the parties, and was, therefore, in the nature of a consent decree. A consent decree, absent fraud, may not be the subject of an appeal. (*English v. English* (1979), 72 Ill. App. 3d 736; *Pierce v. MacNeal Memorial Hospital Association* (1977), 46 Ill. App. 3d 42; *Jackson v. Ferolo* (1972), 4 Ill. App. 3d 1011.) Defendant also argues that plaintiff waived the defense of usury by agreeing to the validity of the note, as set forth in the colloquies quoted above. Defendant further argues that plaintiff should not be permitted to challenge the validity of the note since plaintiff (as well as defendant) introduced the note into evidence at trial without raising the usury defense.

While perhaps not rising to the status of a consent decree, the record seems clear that plaintiff agreed as to the validity of the note and participated, through his attorney, in the calculation of the interest without raising the usury defense. It is apparent, therefore, that the order of October 16, 1985, was entered with, if not by, the agreement of the parties. That being the case, however, both the parties and the trial court have overlooked the fact that plaintiff's role was that of guardian of a disabled person, namely, LeRoy Jeanblanc.

The Probate Act (Ill. Rev. Stat. 1985, ch. 110½, par. 1—1 *et seq.*) provides in pertinent part as follows:

"Upon the direction of the court which issued his letters, a guardian may perform the contracts of his ward which were legally subsisting at the time of the commencement of the ward's disability. The court may authorize the guardian to execute and deliver any bill of sale, deed or other instrument." (Ill. Rev. Stat. 1985, ch. 110½, par. 11a—18(b).)

The Act further provides:

"By leave of court without notice or upon such notice as the court directs, a representative may compound or compromise any claim or any interest of the ward or the decedent in any personal estate or exchange any claim or any interest in personal estate for other claims or personal estate upon such terms as the court directs. (Ill. Rev. Stat. 1985, ch. 110½, par. 19—8.)

Nothing in the record before us indicates that plaintiff sought approval of the setoff of the note from the court granting his letters of office.

■ Whether there is a conservator, an administrator, or an executor, claims against the ward, if living, or his estate if dead, should be filed in the court that issued the letters of conservatorship, or administration, and they must be proved, allowed, and ordered paid. (*Nonnast v. Northern Trust Co.* (1940), 374 Ill. 248, 268.) There is no question that the promissory note executed by LeRoy to the defendant constituted a claim against plaintiff's ward, and as such, should have been filed in the court issuing the letters of office to plaintiff.

Yet, as we have previously observed, plaintiff introduced the note at trial. He also agreed to its validity and participated in the postjudgment proceedings which resulted in the allowance of the setoff, without objection. Nor did plaintiff, or any of those occasions, raise the defense of usury on behalf of his ward. Under most circumstances, plaintiff would be deemed to have waived any objection or defense to those proceedings. Compare *In re Marriage of Melton* (1981), 93 Ill. App. 3d 338, 340-41.

■ However, the rule that a conservator or guardian cannot waive any rights of the ward is so well settled that it may be said to be fundamental and elementary. (*Ortman v. Kane* (1945), 389 Ill. 613, 623.) Here, plaintiff's acts which resulted in the setoff of the note amounted to a denial of the ward's rights to a judicial determination of the note, or at the very least, court approval of the setoff which were the ward's rights under the Probate Act.

In light of the foregoing, the orders of October 16, 1985, and January 13, 1986, are vacated, and this case is remanded to the trial court with directions for plaintiff to plead anew to the defendant's post-trial motion. In the event a settlement is reached, said settlement shall be entered into only upon approval by the proper court.

The judgment of the circuit court of Lee County is reversed and remanded.

Reversed and remanded.

LINDBERG, P.J., and INGLIS, J., concur.