AETNA LIFE INSURANCE COMPANY, Plaintiff, *v.* H.W. STOUT & AS-SOCIATES, INC., *et al.*, Defendants.—(ITT Thorp Corporation, Defendant-Appellant; The Peoples State Bank of Newton, Defendant-Appellee.)

Fifth District   No. 81—547

Opinion filed February 15, 1983.

George H. Huber, of Vandalia, for appellant.

Lawrence Eaton, of Eaton, Eaton & Tomaw, of Newton, for appellee.

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

ITT Thorp Corporation (ITT) appeals from a supplemental order of the circuit court of Jasper County which directed that certain receiver's fees, receiver's attorney fees and property taxes be deducted from the proceeds of the sale of certain crops in which ITT held a security interest.

Resolution of the issues presented by this appeal requires that the facts be stated in some detail. Aetna Life Insurance Company (Aetna), a Connecticut corporation, held a mortgage on certain property of H.W. Stout and Associates, Inc., H. Wayne Stout, and C. Lavonne Stout. ITT held a second mortgage on the property, and the Peoples State Bank of Newton, Illinois (Peoples State Bank) held a third mortgage. ITT also claimed an interest in addition to that arising by virtue of its mortgage through a security agreement which included "farm products, and all other properties including general intangibles, choses in action, and other rights of debtor and all proceeds thereof" along with various items of farm equipment and other personal property.

On January 21, 1980, ITT filed a complaint for replevin (Jasper County case No. 80—L—2), seeking possession of the property covered by the security agreement or a judgment for the value thereof. On March 4, 1980, the circuit court ordered that the Stouts assemble the personal property covered by the security agreement and deliver it to ITT. This order was apparently not complied with and, pursuant to a petition filed by ITT, the circuit court on July 16, 1980, entered a rule to show cause ordering the Stouts to appear and show why they should not be held in contempt of court.

On July 30, 1980, Aetna filed a complaint seeking to foreclose its mortgage on the Stout property (Jasper County case No. 80—CH—12), and both ITT and Peoples State Bank counterclaimed for foreclosure on September 18, 1980, and October 21, 1980, respectively. On October 17, 1980, pursuant to a petition filed by Aetna, the court appointed First National Bank of Newton, Illinois, as receiver with respect to the property. The order appointing the receiver also directed

ITT to harvest crops growing on a certain section of the land, and to cause those crops to then be stored at a named facility. H.W. Stout and Associates, Inc., along with Randel Stout, was ordered to proceed in similar fashion with respect to crops growing on another section of the land. In a separate order also entered on October 17, 1980, the court consolidated the replevin and foreclosure actions.

On February 10, 1981, the court entered a judgment of foreclosure and sale on behalf of Aetna. The court found the total amount due Aetna, including judgment on the note secured by the mortgage, late payment charge, interest, insurance costs and attorney fees to be $745,719.28, and ordered that the property be sold if this amount was not paid to Aetna within 21 days from the entry of the judgment of foreclosure.

On March 31, 1981, a supplemental judgment of foreclosure was entered on behalf of ITT. The court found:

> "That ITT Thorp Corporation has a valid lien on the property ***, which said lien is in the amount of $117,613.92 that this lien shall be subordinate only to that of plaintiff, Aetna Life Insurance Company, a Connecticut Corporation; and said ITT Thorp Corporation shall following sale of real estate ***, have priority second only to Aetna [*sic*] Life Insurance Corporation as to proceeds of the Sheriffs Sale as previously ordered by the court and that the Peoples State Bank of Newton, Illinois, shall have priority subordinate to that of ITT Thorp Corporation."

The court further ordered that the bean crop which had been harvested be sold, and that, after crop expenses of $29,664.19 were paid to Randel L. Stout, the balance of proceeds realized from the crop sale be distributed to ITT.

A sheriff's sale of the Stout property was held on April 2, 1981, and Peoples State Bank, the third mortgagee, purchased the property with a bid of $759,319.89. Distribution of these proceeds resulted in the full satisfaction of Aetna's claim, and, after payment of expenses, the payment of $1 to ITT.

On April 6, 1981, Peoples State Bank filed a petition asking the court to reconsider the supplemental judgment of foreclosure. The petition alleged that the judgment did not reflect the agreement of the parties because, among other things, it did not require the proceeds of the beans to be used to pay the 1979 taxes and the fees of the receiver. The receiver filed its final report and petitioned for discharge on the following day. The report stated that the total proceeds of the crop sale amounted to $101,493.69, and that, after storage and other charges and expenses were paid, the sum of $64,019.01 was paid to

ITT "as per Court Order." The receiver pointed out in the report that the 1979 taxes on the property were "still overdue in a sum in excess of $5,000, since the receiver was directed to sell the 1979 crops and distribute the proceeds without payment of said taxes." The report also asked that the receiver be allowed compensation of $2,253.60, and that the receiver's attorney be allowed $1,095.82 for his services and expenses, both sums having been withheld from the proceeds of the bean sale. ITT filed an objection to the report, claiming that the fees should not be paid from the crop proceeds where the receiver was appointed at the request of Aetna. In a supplemental order filed on July 3, 1981, the court allowed the requested fees, and further found that the 1979 taxes should be paid out of rents and profits received by the receiver. Since the post-expense proceeds of the crop sale had already been paid to ITT by the receiver, the court further ordered that ITT pay the receiver a sum sufficient to pay all 1979 property taxes on the land, together with all costs, interests and penalties incurred in connection with those taxes.

ITT filed a post-judgment motion on July 31, 1981, in which it urged the court to reconsider the order allowing for payment of taxes and receiver's fees out of the proceeds of the crops. On August 14, 1981, Peoples State Bank filed a petition for rule to show cause as to why ITT should not be held in contempt of court. The petition alleged that ITT had not paid the tax money to the receiver within the time allotted by the court, and that Peoples State Bank was forced to advance the funds to the receiver in order to avoid further penalties. The petition asked that ITT be held in contempt, that judgment be entered against ITT for the amount of the delinquent taxes plus the attorney fees and other costs incurred by Peoples State Bank.

A hearing on ITT's post-judgment motion was held on September 15, 1981, at which time the court declined to modify its prior order concerning the payment of taxes and receiver's fees. ITT filed notice of appeal on October 14, 1981.

On appeal, ITT asserts that the trial court erred in determining that the receiver's fees, the receiver's attorney fees, and the 1979 property taxes should be paid out of the proceeds of the crop sale. Before reaching the merits of these questions, however, it is necessary for us to address the Peoples State Bank's contention that the appeal must be dismissed.

Peoples State Bank argues that this appeal by ITT is interlocutory in nature, and that ITT was therefore required to file notice of appeal within 30 days of the trial court's order. The bank further contends, apparently in the alternative, that the post-judgment motion

filed by ITT on July 31, 1981, was a second post-trial motion directed at the court's March 31, 1981, supplemental judgment of foreclosure, and that the July 31 motion did not extend the time for filing notice of appeal. Acceptance of either of these theories would compel dismissal of the appeal, since ITT did not file its notice of appeal until October 14, 1981, some 29 days after the hearing denying the relief requested by the July 31 motion, and nearly 2½ months after the filing of the motion itself.

■ As to the first argument advanced in support of dismissal, we disagree with the bank's conclusion that this appeal was interlocutory in nature. Rather, we believe the judgment complained of is final and appealable as a matter of right pursuant to the provisions of Supreme Court Rule 301 (87 Ill. 2d R. 301). It has often been stated that a judgment is final for purposes of Rule 301 when the court has made a determination "on the issues presented by the pleadings which ascertains and fixes absolutely and finally the rights of the parties in the lawsuit." (*Flores v. Dugan* (1982), 91 Ill. 2d 108, 112, 435 N.E.2d 480.) It has also been said that a judgment is final when it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment. *Flores v. Dugan* (1982), 91 Ill. 2d 108, 112; *Village of Niles v. Szczesny* (1958), 13 Ill. 2d 45, 48, 147 N.E.2d 371.

■ In this case, we believe that the judgment was final and appealable as of right no later than July 3, 1981. Examination of the record reveals that the substantive claims of the parties had been fully disposed of on or before the date of that order. The property had been sold by the sheriff, the sale had been approved by the court, and distribution of the proceeds had resulted in the satisfaction of Aetna's claim. The court had fixed the amount of ITT's lien, and determined that the claim of ITT had priority over that of Peoples State Bank. The receiver has sold the crops in accordance with the order of the court, had fully distributed the proceeds, and had been discharged by the order of July 3. The rights of the parties were fixed and absolute in all relevant respects. While the bank points out that the court retained jurisdiction for purposes of the receiver's final accounting, such an accounting was entirely incidental to the substantive claims of the parties, and the fact that the court retained jurisdiction for this purpose does not conflict with the conclusion that final judgment had been rendered. (*Slavick v. Michael Reese Hospital & Medical Center* (1980), 92 Ill. App. 3d 161, 415 N.E.2d 1060.) We note parenthetically that this could also be viewed as an appeal taken as a matter of right under Supreme Court Rule 304(b)(2) (87 Ill. 2d R. 304(b)(2)). In either

case, whether it is viewed as an appeal from a Rule 301 final judgment or an appeal from a Rule 304 final judgment that does not dispose of an entire proceeding, our conclusion is the same. Accordingly, we reject the bank's contention that the appeal was interlocutory in nature, and that ITT was thereby required to file notice of appeal within 30 days of the July 3, 1981, order.

Having concluded that this appeal has been taken as a matter of right, we must address the bank's alternative argument that the notice of appeal was nonetheless untimely. Supreme Court Rule 303(a) (87 Ill. 2d R. 303(a)) requires that:

> "[T]he notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from, or, if a timely post-trial motion directed against the judgment is filed, whether in a jury or a nonjury case, within 30 days after the entry of the order disposing of the motion."

With respect to this issue, the bank appears to take the position that judgment was rendered by the court's pronouncement of March 31, 1981, that its own April 6, 1981, petition to reconsider that judgment was a post-trial motion, and that this post-trial motion was disposed of by the supplemental order of July 3, 1981. The bank argues that ITT's post-judgment motion of July 31, 1981, was a second post-trial motion directed at the court's March 31, 1981, supplemental judgment, and that it did not operate to extend the time for filing notice of appeal beyond 30 days from July 3 when the first motion was disposed of.

■ Even if we were to accept the premise that final judgment was rendered on March 31, 1981, the bank's argument is without merit. It is, as the bank points out, a general rule that a second post-trial motion does not operate to extend the time for filing a notice of appeal. (*Rose v. Centralia Township High School District No. 200* (1978), 59 Ill. App. 3d 606, 607, 375 N.E.2d 1039.) An exception to this rule exists, however, in situations where the issues raised in the second post-trial motion could not have been raised in the first one. (*In re Marriage of Viehman* (1980), 91 Ill. App. 3d 315, 319-20, 414 N.E.2d 853.) The instant case falls within this exception. It was only in response to the bank's April 6, 1981, motion seeking reconsideration that the trial court determined that the receiver's fees, receiver's attorney fees and 1979 property taxes should be paid out of proceeds from the crop sale. Until the court heard arguments and entered its order to that effect on July 3, 1981, the issues now raised on appeal had not arisen at all. On July 31, 1981, ITT filed its post-judgment

motion directed solely at the July 3 order. This post-judgment motion was not disposed of until the hearing of September 15, 1981. On October 14, 1981, 29 days after its post-judgment motion had been denied, ITT filed notice of appeal in the circuit court. Under these circumstances, that notice was timely, and this court has jurisdiction to entertain the appeal.

■■ We now turn to the merits. ITT initially claims that the trial judge improperly ordered that receiver's and receiver's attorney fees be paid out of the proceeds from the crop sale. Illinois courts have long recognized, however, that a receiver, for his own fees, must look first to the income generated by the subject property. (See *Prudence Co. v. Illinois Women's Athletic Club* (1936), 284 Ill. App. 210, 218-19, 1 N.E.2d 702; *Miller v. American Light & Fixture Co.* (1913), 181 Ill. App. 623, 628-30.) The same is true with respect to fees for the receiver's attorney when counsel has been appointed by leave of the court. (*Rosenblatt v. Michigan Avenue National Bank* (1979), 70 Ill. App. 3d 1039, 1044, 389 N.E.2d 182.) Here, the only income generated by the property came from the sale of the crops and the receiver was properly paid out of the proceeds of that sale. The same is true as to payment of the receiver's attorney fees, since the order appointing the receiver specifically authorized it to retain legal counsel. This determination is not altered by the presence of ITT's security interest in addition to its mortgage on the property, since the rule as to receiver's fees is not affected by the existence of such a lien. (See *Rosenblatt v. Michigan Avenue National Bank* (1979), 70 Ill. App. 3d 1039, 1044.) Accordingly, we affirm that portion of the trial court's order directing the receiver to take its own fees and those of its attorney from the proceeds of the crop sale.

■■ Finally, ITT contends that the trial court erred in ordering it to return to the receiver from the crop sale proceeds the sum of $6,472.97, in order that the receiver might use this money to pay the 1979 property taxes on the land, along with interest, penalties and costs. We agree that this portion of the order was erroneous. While it is the duty of a receiver to make such payments as would, so far as possible, prevent the enforcement of prior liens on the property (*Driever v. Shephard* (1930), 259 Ill. App. 239, 244), it is equally well settled that the purchaser at a judicial sale takes the property subject to all outstanding liens thereon. (*Davis v. Dale* (1894), 150 Ill. 239, 244, 37 N.E. 215.) In this instance, had the receiver been ordered to pay the taxes prior to the sale of the property, in order to prevent enforcement of the tax lien, there could be little doubt as to the propriety of such an order. When the bank purchased the property on

April 3, 1981, however, it took the property subject to all of the liens which were outstanding, including the tax lien. (*Community Savings & Loan Association v. Cosmopolitan National Bank* (1966), 72 Ill. App. 2d 202, 208-09, 219 N.E.2d 103.) It was not until three months after the sale that ITT was ordered to return from crop proceeds an amount sufficient to pay the 1979 taxes. As noted by ITT, the effect of the court's order would be to pass the property to the bank, the third mortgage holder, with the taxes paid and the lien discharged. Our research on the question, as well as considerations of fundamental fairness, disclose no basis for such an order, particularly where the court specifically found that the claim of ITT had priority second only to that of Aetna and superior to that of the bank. The receiver should not have been ordered to assist the purchaser, by paying the taxes out of the crop proceeds some three months after the foreclosure sale, and it makes no difference that those taxes had accrued prior to the time that the property was sold. (See *Community Savings & Loan Association v. Cosmopolitan National Bank* (1966), 72 Ill. App. 2d 202, 209.) Accordingly, that portion of the trial court's order directing ITT to pay back to the receiver an amount sufficient to pay the 1979 property taxes along with interest, penalties and costs is reversed.

For the foregoing reasons, that portion of the supplemental order of the circuit court of Jasper County which ordered that receiver's and receiver's attorney fees be taken from the proceeds of the crop sale is affirmed. That portion of the order compelling ITT to return to the receiver $6,427.97 for payment of the 1979 property taxes along with interest, penalties and costs thereon is reversed.

Affirmed in part, reversed in part.

JONES and KARNS, JJ., concur.