773 F.2d 142
 George FABE, Superintendent of Insurance, State of Ohio,
Columbus, Ohio, Liquidator of Proprietors'
Insurance Company (an Ohio Corporation),
Plaintiff-Appellee,
v.
FACER INSURANCE AGENCY, INC., Defendant-Appellant.
 No. 84-2326.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 22, 1985.
Decided Sept. 9, 1985.
 
 Jane Hays Henneman, Thomas, Mamer & Haughey, Champaign, Ill., for plaintiff-appellee.
 William R. Scott, Allen & Korkowski & Assoc., Rantoul, Ill., for defendant-appellant.
 Before ESCHBACH and POSNER, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.*
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 Facer Insurance Agency, Inc. (Facer) appeals from the district court's[1] order granting summary judgment to the plaintiff George Fabe (Fabe), 588 F.Supp. 1330. Fabe is the Superintendent of Insurance of the State of Ohio, and appears here as liquidator of Proprietors' Insurance Company (PIC), an Ohio corporation with its principal place of business in Ohio. Fabe brought this diversity action seeking to recover premiums and commissions from Facer, a Delaware corporation with its principal place of business in Illinois. Both Fabe and Facer agree that Illinois law controls. We affirm the district court's grant of summary judgment.
 
 I. FACTS
 
 2
 Until 1981, PIC was in the business of insuring against aviation risks. On January 17, 1980, PIC and Facer entered an Agency Agreement, which was executed and performed in Illinois. By the terms of this contract, Facer was appointed PIC's agent for procuring applications for aviation insurance in Illinois, and for collecting and receiving premiums for such insurance. The Agency Agreement read in relevant part:
 
 
 3
 1. [T]he Agent may collect, receive, and receipt premiums on insurance proposals tendered to and accepted by the Company, and may hold such premiums as a trustee, separate and apart from all the other moneys belonging to the agent and retain out of premiums so collected, as full compensation for business placed with the company, commissions * * *.
 
 
 4
 The Agent's account on the Company's books evidencing a debtor-creditor account is deemed merely a record of business transacted. Neither the keeping of an account in such form, nor the rendering of same, nor failure to enforce prompt remittance, nor alteration in compensation rate, nor compromise or settlement shall be considered waiver of the trust relationship as to premiums collected by the Agent.
 
 
 5
 2. Money due the Company on business placed by the Agent with the Company shall be paid in full no later than forty-five (45) days following the end of the month in which policies become effective.
 
 
 6
 * * *
 
 
 7
 * * *
 
 
 8
 If the Company shall return or refund to any insured the whole or any part of premiums from which the Agent has retained commissions and/or charges, the Agent shall promptly repay to such insured the same proportionate part of retained commissions and/or charges.
 
 
 9
 After issuance by the Company of any contract of insurance directly to an insured, the Agent shall be liable to the Company for the earned premium on each policy or binder of insurance solicited and written through the Agent, whether the same shall have been collected or not.
 
 
 10
 Pursuant to this agreement, Facer solicited proposals and PIC wrote insurance contracts, for which Facer collected and forwarded premiums and retained commissions. On July 30, 1981, Robert L. Ratchford, Jr., then Superintendent of Insurance of the State of Ohio, was appointed Conservator of PIC by the Court of Common Pleas of Franklin County, Ohio, to oversee the liquidation of PIC.[2] Ratchford as liquidator notified Facer between July 30 and September 4, 1981, that all of the insurance policies procured by Facer for PIC were cancelled due to PIC's liquidation.
 
 
 11
 PIC's records show that as of July 30, 1981, Facer owed PIC $20,453.47 on account as total premiums, both earned and unearned, for insurance policies procured through Facer. As of that date, $3,609.75 of the total $20,453.47 premiums had been earned. On January 31, 1982, Facer's commissions on unearned premiums, resulting from the cancellation of the PIC policies, totalled $9,580.75. Fabe claims that Facer is liable for all of the premiums due on July 30, regardless of whether the policies were subsequently cancelled, or whether the premiums had actually become earned prior to that date. Fabe also contends that Facer must seek its remedy for any offset for unearned commissions as a general creditor of PIC in the Ohio liquidation proceedings.
 
 
 12
 In response, Facer asserts that it is not liable to PIC for unearned premiums, because the insolvency of PIC and the cancellation of the policies relieved Facer of its contractual responsibility to forward premiums. Further, Facer states that it had already refunded all unearned commissions to the cancelled policyholders, as it contends was required by the Agency Agreement. When Facer informed Fabe of its intention to pay only earned premiums, Fabe brought this action in the district court. The court granted Fabe's motion for summary judgment in Fabe v. Facer Insurance Agency, Inc., 588 F.Supp. 1330 (C.D.Ill.1984). The court held that the Illinois statute governing the rights of agents to set-offs against insurance companies in the process of liquidation rendered the agent Facer liable for the entire premiums due on PIC policies written (and still in effect) by Facer prior to the court-ordered liquidation on July 30, 1981.
 
 II. PROPRIETY OF GRANT OF SUMMARY JUDGMENT
 
 13
 Facer raises many issues on appeal, but the crux of its argument is that the terms of the Agency Agreement, rather than the Illinois statutory scheme, control the dispute. Facer contends that under that agreement it is liable only for that portion of the premiums that was earned prior to the cancellation of the policies. We agree with the district court, however, that the Illinois statutory liquidation procedure expressly governs this case. Ill.Rev.Stat. Ch. 73, Sec. 818 (1981) provides:
 
 
 14
 No set-off shall be allowed in favor of an insurance agent or broker against his account with the company, for the unearned portion of the premium on any cancelled policy, unless that policy was cancelled prior to the entry of the Order of Liquidation or Rehabilitation, and unless the unearned portion of the premium on that cancelled policy was refunded or credited to the assured or his representative prior to the entry of the Order of Liquidation or Rehabilitation.
 
 
 15
 Under the statute, then, because the policies in question were cancelled after the court-ordered liquidation, Facer owes Fabe for the entire premiums due on PIC policies written by Facer prior to July 30, 1981, the date liquidation was ordered. The statute represents the legislative plan for marshalling the assets of insolvent insurance companies to assure fair distribution.
 
 
 16
 Facer argues that the liquidation statute does not apply because it is not seeking a set-off for unearned premiums, as it contends that it never was obligated to PIC for unearned premiums. As the district court noted, however, the Agency Agreement required that Facer as agent pay PIC the full premiums for policies it procured within forty-five days of the end of the month in which the policies became effective. Further, the course of dealing between the parties demonstrates that Facer consistently paid PIC the total premiums for policies it procured when PIC invoiced Facer, regardless of whether the premiums had been earned or collected. Facer maintains that holding it responsible to Fabe for uncollected premiums amounts to the impermissible creation of independent liability on the part of Facer to pay the premiums. Facer, however, chose to extend credit to the policyholders; an agent's extension of credit to policyholders does not affect its liability to pay the premiums. See Ratchford v. United States Central Underwriters Agency, Inc., 492 F.Supp. 137, 139 (E.D.Mo.1980). And as the district court pointed out, the final sentence of paragraph 2 of the Agency Agreement evinces the parties' intention that if Facer were to extend credit to policyholders, it would remain responsible to PIC whether or not it collected from the policyholders.
 
 
 17
 As for the unearned commissions in dispute here, because they were retained by Facer from premiums on policies cancelled subsequent to the date of liquidation, Ill.Rev.Stat. ch. 73, Sec. 818 operates to make Facer liable for these commissions as well. Contrary to Facer's contention, it had no right to refund the unearned commissions after the Order of Liquidation. The mailgram sent to Facer on July 30, 1981, by Robert L. Ratchford, the original court-appointed conservator of PIC, expressly revoked Facer's authority to refund or credit its policyholders any unearned premiums, and stated that any such refunds would be made at Facer's own expense. See Cork v. Associated International Insurance Managers, Inc., 58 Ill.App.2d 331, 338, 208 N.E.2d 4, 8 (1st Dist.1965) (notice of liquidation revoked authority, granted in agreement between the parties, to make withdrawals from bank account). In sum, because no issue of fact exists and under Illinois law Facer is liable to Fabe for the total premiums, including the unearned commissions, on the cancelled policies, the district court properly granted Fabe's motion for summary judgment.
 
 III. PREJUDGMENT INTEREST
 
 18
 Facer also contends that the district court erred in awarding Fabe prejudgment interest on his claims. The Illinois Interest Act, Ill.Rev.Stat. Ch. 17, Sec. 6402 (1983), provides in relevant part that "[c]reditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing * * *." Facer argues that under the principle of ejusdem generis, the general term "instrument of writing" should be interpreted to mean writings of the same nature as bills, bonds, and promissory notes; that is, writings creating an indebtedness. The Agency Agreement, Facer contends, does not fit this category. Facer also claims that prejudgment interest was improperly awarded here because the amount Fabe alleges to be due is not liquidated, as a bona fide difference of opinion existed between the parties as to the amount due.
 
 
 19
 We hold that the district court's award of prejudgment interest to Fabe was appropriate. The Agency Agreement is an instrument in writing within the meaning of the Interest Act. A written contract is a "written instrument" within that statute if it contains some price provisions so that the amount due under the contract will be fixed or determinable, and as long as it is due in the sense that a debtor-creditor relationship has come into being. Servbest Foods, Inc. v. Emessee Industries, Inc., 82 Ill.App.3d 662, 677, 37 Ill.Dec. 945, 957, 403 N.E.2d 1, 13 (1st Dist.1980). Under the Agency Agreement, once Facer placed business for PIC, it became contractually liable for the whole premiums. Also, insurance policies have been held to be instruments in writing within the Interest Act, with interest computed from the date payment becomes due under the policy. See, e.g., Conway v. Country Casualty Insurance Co., 97 Ill.App.3d 768, 776, 53 Ill.Dec. 175, 181-182, 423 N.E.2d 559, 565-66 (3d Dist.1981), rev'd in part on other grounds, 92 Ill.2d 388, 65 Ill.Dec. 934, 442 N.E.2d 245 (Ill.1982); Central National Chicago Corp. v. Lumbermen's Mutual Casualty Co., 45 Ill.App.3d 401, 408, 3 Ill.Dec. 938, 943, 359 N.E.2d 797, 802 (1st Dist.1977). The Agency Agreement together with the insurance policies Facer wrote for PIC, then, constitute an instrument in writing that establishes a fixed amount due the amount of the premium.
 
 
 20
 Facer's contention that the "bona fide difference of opinion" that existed between Facer and Fabe as to the amount due renders the award of prejudgment interest inappropriate is without merit. A court may award prejudgment interest even though a good faith defense exists, and even when the claimed right and the amount due require judicial ascertainment. See, e.g., LaGrange Metal Products v. Pettibone Mulliken Corp., 106 Ill.App.3d 1046, 1054, 62 Ill.Dec. 619, 626, 436 N.E.2d 645, 652 (1st Dist.1982); E.M. Melahn Construction Co. v. Village of Carpentersville, 100 Ill.App.3d 544, 549-51, 56 Ill.Dec. 101, 106-107, 427 N.E.2d 181, 186-87 (2d Dist.1981); Servbest Foods, 82 Ill.App.3d at 677, 37 Ill.Dec. at 957, 403 N.E.2d at 13; Haas v. Cravatta, 71 Ill.App.3d 325, 330-32, 27 Ill.Dec. 414, 418-19, 389 N.E.2d 226, 230-31 (2d Dist.1979). At the heart of the dispute here was Facer's liability for unearned and uncollected premiums; once the district court determined that Facer owed the entire premiums on the cancelled policies, the amount due was easily determinable. Facer has never questioned the calculations as to what the total premiums on policies procured by Facer amounted to on July 30, 1981.
 
 IV. CONCLUSION
 
 21
 The district court's order granting summary judgment and prejudgment interest to Fabe is affirmed. Costs assessed against defendant.
 
 
 
 *
 The Honorable Floyd R. Gibson, Senior Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 The Honorable Harold A. Baker, Chief Judge for the United States District Court for the Central District of Illinois
 
 
 [2]
 Ratchford was succeeded as Superintendent of Insurance and as liquidator of PIC by Robert H. Katz on September 3, 1982. George Fabe, the plaintiff here, replaced Katz as Superintendent and as liquidator on February 25, 1983