**WESTAMERICA BANK, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**No. C–94–1158 EFL.**

United States District Court, N.D. California.

Feb. 28, 1995.

Stephen H. Dye, Bronson, Bronson & McKinnon, San Francisco, CA, for plaintiff.

J. Christopher Kohn, U.S. Dept. of Justice, Civil Div., Washington, DC, for defendants.

*ORDER CONSTRUING § 553 OF THE BANKRUPTCY CODE*

LYNCH, District Judge.

Before the Court are two consolidated actions arising out of a bankruptcy case that began under Chapter 11 of the Bankruptcy

Code (the "Code") and was subsequently converted to a case under Chapter 7 of the Code.[1] One is an action filed by the United States of America on behalf of the Maritime Administration, Department of Transportation ("MARAD") for interpleader and declaratory relief to resolve competing claims to monies that the United States withheld under a contract for ship repair (the "retention monies"). The other is an action filed by Donco Industries, Inc. ("Donco") for turnover of the same retention monies. This Court withdrew reference of these actions from the bankruptcy court, and the United States, a party in both actions, now moves for partial summary judgment on an issue common to both.[2]

## BACKGROUND

Donco was the prime contractor under several contracts for ship repair performed on vessels owned by the United States, including the Adventurer, the Cape Gibson and the Cornhusker State. With subcontractors PacTherm, Inc. ("PacTherm") and Fraser's Boiler Service, Inc. ("Fraser's"), Donco completed work under the Cape Gibson and Cornhusker State contracts and performed most of the work required under the Adventurer contract. MARAD paid DONCO for the work performed under the Cape Gibson and Cornhusker State contracts, after Donco certified to MARAD that all subcontractors had been or would be paid. MARAD also paid for a portion of the work for which Donco had submitted payment requests under the Adventurer contract.

Thereafter, on December 29, 1990, Donco filed a petition for relief under Chapter 11 of the Code.[3] On December 24, 1992, Pac-Therm filed an admiralty action against Donco and the United States, as owner of the vessels, to collect for unpaid work performed by PacTherm on the Adventurer and Cornhusker State contracts. On March 19, 1993, Fraser's filed a similar action for work it performed on the Cornhusker State and Cape Gibson contracts.[4] To avoid double payment for the repairs—once to Donco and again to subcontractors PacTherm and Fraser's—MARAD withheld approximately $600,000 of the monies for which Donco had submitted payment requests under the Adventurer contract. At the same time, the United States, on behalf of MARAD, filed an action for interpleader and declaratory relief to resolve competing claims to the retention monies. Similarly, Donco separately filed a complaint in bankruptcy court against the United States, PacTherm and Fraser's seeking the turnover of the retention monies.

According to the United States, the monies withheld from Donco are subject to offset and/or recoupment as to the claims of other government agencies against the debtor company.[5] These claims include Internal Revenue Service ("IRS") claims totalling approximately $426,000, claims of the Environmental Protection Agency ("EPA") for approximately $210,000, and claims of the United States totalling approximately $1,800,000 for alleged violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729.[6]

## DISCUSSION

The United States seeks a declaratory judgment that MARAD may offset its debt

---

1. *In re Donco Industries, Inc.*, No. 92–49331–NS (Bankr.N.D.Cal.1992).

2. Pursuant to an order dated August 24, 1994, Westamerica Bank ("Westamerica") was substituted for Donco to pursue litigation on behalf of Donco's Chapter 7 bankruptcy estate.

3. The bankruptcy case was converted to a case under Chapter 7 on September 22, 1993.

4. In an order dated June 11, 1994, the Court granted the United States' motion to dismiss the subcontractors' actions, mooting any potential offset claims by the United States relating to these claims.

5. This order addresses only the United States' motion regarding setoff, not its motion regarding

recoupment. To the extent the latter claim survives and the United wishes to pursue it, the United States shall rebrief the issue, as directed by the Court.

6. Even if this Court were to hold that there is mutuality between different government agencies for purposes of setoff under § 553, the EPA and the FCA claims appear to be unlikely candidates for setoff on the facts of this case. The EPA claim appears subordinate by way of stipulation, if not as a matter of law, to other unsecured claims against the *Donco* estate. The FCA claim appears to collapse with the dismissal of the subcontractors' claims.

to Donco with claims of other government agencies against Donco, such as those noted above. The question this Court is asked to resolve is whether there is mutuality between different governmental agencies permitting setoff under § 553 of the Code.[7]

There is a split of authority on whether there is mutuality between different governmental agencies for purposes of setoff under § 553 of the Code.[8] *See United States v. Arkison (In re Cascade Roads, Inc.)*, 34 F.3d 756, 763 n. 8 (9th Cir.1994) (quoting *Shugrue v. Fischer (In re Ionosphere Clubs, Inc.)*, 164 B.R. 839, 842–43 (Bankr.S.D.N.Y.1994)). Because the Ninth Circuit recently declined to express an opinion on the matter, *Arkison*, 34 F.3d at 763 n. 8, this Court considers an issue of essentially first impression in this Circuit. For much the same reason as the courts in *Shugrue v. Fischer (In re Ionosphere Clubs, Inc.)*, 164 B.R. 839, 842–43 (Bankr.S.D.N.Y.1994), and *State of Illinois v. Lakeside Community Hosp., Inc. (In re Lakeside Community Hospital Inc.)*, 151 B.R. 887, 892 (N.D.Ill.1993), as set out below, this Court finds that mutuality does not exist as between different government agencies for purposes of setoff under § 553.

Analysis begins with § 553 of the Code. Section 553 codifies the established "right to set off mutual prepetition debts owed to and owed by a creditor." *In re Drexel Burnham Lambert Group Inc.*, 113 B.R. 830, 839 (Bankr.S.D.N.Y.1990). Section 553(a) provides that "this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case ... against a claim of such creditor against the debtor that arose before the commencement of the case." 11 U.S.C. § 553(a). "[S]ection 553 does not create a right of setoff; the right exists, if at all, under applicable nonbankruptcy law." *Id.*, at 839.

"By its terms, section 553 permits setoff only by 'a creditor' of a 'mutual debt owing by such creditor to the debtor' against 'a claim of such creditor against the debtor.'" *Shugrue*, 164 B.R. at 842. Therefore, to establish a right to setoff, a creditor bears the burden to prove: (1) the debtor owes a debt to the creditor which arose prepetition; (2) the debtor has a claim against the creditor which arose prepetition; and (3) the debt and claim are mutual. *Braniff Airways, Inc. v. Exxon Co., USA*, 814 F.2d 1030, 1034 (5th Cir.1987). *See First Nat'l Bank of Louisville v. Hurricane Elkhorn Coal Corp. II*, 763 F.2d 188, 190 (6th Cir.1985).

Although the requirements that the debtor owe a debt to the creditor which arose prepetition and have a claim against the creditor which arose prepetition are of no less importance, only the requirement of mutuality is at issue on the instant motion. For purposes of setoff, mutuality contemplates that debts and credits be "in the same right and between the same parties, standing in the same capacity and same kind or quality." *Boston and Maine Corp. v. Chicago Pac. Corp.*, 785 F.2d 562, 556 (8th Cir.1986); *see Lakeside* at 4; 4 Collier on Bankruptcy § 553.04(2) at 553–22 (15th ed. 1991).

To give effect to each word of § 553, *see Crandon v. United States*, 494 U.S. 152, 171, 110 S.Ct. 997, 1008, 108 L.Ed.2d 132 (1989) (Scalia, J., concurring), governmental units must "be treated as distinguishable and therefore not the same creditor within the provisions of the statute." *Jarboe v. United States Small Business Admin. (In re Hancock)*, 137 B.R. 835, 891 (Bankr.N.D.Okla. 1992). A "creditor" is defined in § 101 of the Code as an "entity that has a claim against

---

7. The United States would, of course, have to prove any such claims as a precondition of offset and/or recoupment.

8. *Compare, e.g., In re Mohar*, 140 B.R. 273, 277 (Bankr.D.Mont.1992) (finding mutuality among different governmental agencies); *United States ex rel. Small Business Admin. v. Rinehart*, 88 B.R. 1014, 1016–17 (D.S.D.1988) (same), *aff'd in part, rev'd in part*, 887 F.2d 165 (8th Cir.1989); *In re Britton*, 83 B.R. 914, 919, 921 (Bankr.E.D.N.C.

1988) (same); *In re Schons*, 54 B.R. 665, 667 (Bankr.W.D.Wash.1985) (same); and *In re Sound Emporium, Inc.*, 48 B.R. 1, 3 (Bankr.W.D.Tex. 1984) (same), *aff'd*, 70 B.R. 22 (W.D.Tex.1987), *with, e.g., Shugrue v. Fischer (In re Ionosphere Clubs, Inc.)*, 164 B.R. 839, 842–43 (Bankr. S.D.N.Y.1994) (finding no mutuality among different governmental agencies); *State of Illinois v. Lakeside Community Hosp., Inc. (In re Lakeside Community Hospital Inc.)*, 151 B.R. 887, 892 (N.D.Ill.1993) (same).

the debtor." 11 U.S.C. § 101(10). An entity is defined in § 101(15) to include a "governmental unit," and a "governmental unit" is in turn defined in section 101(27) of the Code as "United States; State; ... [or] department, agency, or instrumentality of the United States." If government units were not considered separate for purposes of § 553, the distinct definitional significance of "creditor," "entity" and "governmental unit" within the meaning of the Code would be at least partially lost. Treating government units separately preserves the definitional framework of the Code, whereas treating them as one and the same renders portions of the Code dead letter.

Treating government agencies as separate for purposes of setoff comports with the generally distinct administrative structure of separate government agencies. As the court recognized in *Shugrue,* government agencies "each have separate budgets, staffs, and, most importantly, possess different rights, claims, privileges, powers and relationships." 164 B.R. at 843; *see also Jarboe,* 137 B.R. at 846 (indicating that it is idle to pretend that Federal government agencies are not the same); *In re Julien Co.,* 116 B.R. 623 (Bankr.W.D.Tenn.1990) (finding that two government agencies are not the same). That different government agencies would file separate proofs of claim against Donco only underscores their distinct identity for purposes of § 553.

Furthermore, a contrary result would run afoul of an underlying policy of the Code to prevent preferential treatment of creditors. *See, e.g., Sampsell v. Imperial Paper & Color Corp.,* 313 U.S. 215, 219, 61 S.Ct. 904, 907, 85 L.Ed. 1293 (1941). As the court in *Shugrue* put it:

> [a] creditor which can set off an independent debt to a debtor may effectively receive full repayment and is therefore in a preferred position vis-a-vis other creditors who cannot set off their claims. A narrow interpretation of mutuality ensures that set off is allowed only in situations in which the equitable considerations are strongest.

164 B.R. at 843.

Although the *Arkison* Court declined to express an opinion on whether mutuality ex-

ists between different government agencies for purposes of setoff, the Ninth Circuit's decision in *England v. Industrial Commission of Utah (In re Visiting Homes),* 643 F.2d 1356 (9th Cir.1981), supports this Court's holding that mutuality does not exist. In *England,* the Ninth Circuit rejected the claim of the Utah Industrial Commission that it, as statutory collection agent for Utah resident employees of the bankrupt, had a right to set off the claims of the Utah resident employees against the debt owing the bankrupt by the Utah Social Services Department on grounds mutuality was lacking. 643 F.2d 1356. That the state agency in *England* may have acted as a statutory collection agent for state residents who held wage claims against the debtor does not counsel a different result.

The Supreme Court's decision in *Cherry Cotton Mills, Inc. v. United States,* 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835 (1946), on which the United States and many of the courts finding mutuality between different government agencies rely, is not inconsistent. In *Cherry,* the federal government was permitted to set off a tax refund owed to the petitioner under the Agricultural Adjustment Act against money that the petitioner owed the Reconstruction Finance Corporation on a note. 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835. As the court explained in *Lakeside,* *Cherry* does not control the disposition of the issue presented:

> First, *Cherry* was not a bankruptcy case and thus did not involve the same issues or rights. In *Cherry,* the federal government sought to setoff a tax refund due the petitioner under the Agriculture Adjustment Act against a loan the petitioner owed the Reconstruction Finance Corporation under 28 U.S.C. § 250(1). In *Cherry,* no other creditors were involved, merely a federally-created corporation. In this case, other unsecured creditors are involved. Second, the *Cherry* court itself limited its conclusions to the facts of that case or similar circumstances in nonbankruptcy cases. 327 U.S. at 539–40, 66 S.Ct. at 730.

151 B.R. at 892 (citations omitted). As the court in *Shugrue* adds, in *Cherry* the government "sought neither immunity nor priority."

164 B.R. at 842. Thus, the decision in *Cherry*, like a decision to find no mutuality between different government agencies, avoids disruption of "the prime bankruptcy policy of equality of distribution among creditors." *Id.* (quoting *Jarboe*, 137 B.R. at 847).

To summarize, this Court finds that mutuality does not exist between different government agencies for purposes of § 553 of the Code. Accordingly, one government agency may not set off the claims and debts of another in a bankruptcy proceeding.

IT IS SO ORDERED.