LINCOLN TOWERS INSURANCE AGENCY, INC., Indiv. and as Representative of All Persons Similarly Situated, Plaintiffs-Appellees, v. MARK BOOZELL, as Liquidator of State Security Insurance Company, Defendant-Appellant.

First District (6th Division)   No. 1—95—4139

Opinion filed August 22, 1997.

GREIMAN, P.J., specially concurring in part and dissenting in part.

Steven J. Teplinsky and James R. Latta, both of Fagel & Haber, and Peter Gallanis and Anita Msall, all of Chicago, for appellant.

Beermann, Swerdlove, Woloshin, Barezky, Becker, Genin & London, of Chicago (Alvin R. Becker and Christopher A. White, of counsel), for appellees.

JUSTICE ZWICK delivered the opinion of the court:

This action was brought by plaintiff, Lincoln Towers Insurance Agency, Inc., on behalf of itself and other similarly situated insurance producers for State Security Insurance Company, an insurance company in liquidation. Plaintiffs sought a declaration of their right to set off claims against the insolvent insurer for commissions against premiums due the insolvent company. In addition, plaintiffs challenged the liquidator's administration of the insolvent insurance company's estate and requested a declaration that section 206 of the Illinois Insurance Code (215 ILCS 5/206 (West 1996)) is unconstitutional. Upon cross-motions for summary judgment, the trial court granted plaintiffs' motion in part, holding that they were entitled to set off the amounts of their earned commissions against premiums due the insolvent insurance company, which were being held in premium fund trust accounts. Defendant, the liquidator for the insolvent insurance company, appealed the order of the trial court,

and plaintiffs filed a motion to dismiss the appeal, which was taken with the case.

The undisputed facts established that, prior to its liquidation on June 16, 1993, State Security Insurance Company (State Security) issued property and casualty insurance policies. The plaintiffs were producers of insurance who acted as agents or brokers in soliciting insureds for State Security. State Security paid the producers a commission based upon the type of insurance sold. In the usual course of business, when the producers received an application for insurance, they collected the premiums directly from the insured and delivered the policies of insurance from State Security to the insured. Pursuant to section 508.1 of the Illinois Insurance Code (215 ILCS 5/508.1 (West 1996)), all money received by a producer for selling or renewing insurance policies was held by the producer in a fiduciary capacity for the benefit of the insurer. These funds were held in a premium fund trust account.

State Security and the producers reconciled their transactions on a monthly basis in accordance with a "written account current" system. Each month, State Security issued a statement of accounts to each producer that reflected the premiums written, commissions earned, policy cancellations, and the amount due and owing to State Security. The producers then deducted commissions owed to them, credited State Security for all unearned commissions due on canceled policies and remitted the net amount due to State Security. Prior to the liquidation, the producers paid premiums due to State Security within 45 days of the close of the month for which the account current statement was prepared, whether or not the premium had actually been collected from the insured.

Approximately five months after the entry of the agreed order of liquidation, the producers filed the instant declaratory judgment action, seeking a declaration of their right to set off earned commissions against previously collected premiums due State Security. Upon consideration of cross-motions for summary judgment, the trial court entered an order granting partial summary judgment in favor of the producers, ruling as follows:

> (1) the contract clause in the United States Constitution governed the relationship of the parties, and the contractual agreements between the producers and State Security superseded the order of liquidation and section 206 of the Insurance Code; and
>
> (2) the producers were entitled to deduct their earned commissions from that portion of premiums held in the trust fund account that they had collected on behalf of State Security prior to the liquidation on June 16, 1993.

In accordance with these rulings, the court ordered the producers to provide a verified account statement to the liquidator within 45 days showing the status of all debits, credits and premiums held.

We initially address plaintiffs' motion to dismiss the appeal for lack of appellate jurisdiction.

■ Supreme Court Rule 304(b)(2) specifically provides for review of a judgment or order entered in the administration of a liquidation that finally determines a right or status of a party. 155 Ill. 2d R. 304(b)(2). A final order is one that disposes of the merits of the case, despite the fact that certain incidental matters may be reserved for consideration. *McCaffrey v. Nauman*, 204 Ill. App. 3d 761, 764, 562 N.E.2d 628 (1990). An order is not automatically rendered nonfinal merely because the trial court has retained jurisdiction over the cause for some purpose. *McCaffrey*, 204 Ill. App. 3d at 764. The true test of the finality of an order is met when it terminates the litigation on the merits and finally determines the rights and obligations of the parties, without leaving matters of substantial controversy for subsequent resolution. *McCaffrey*, 204 Ill. App. 3d at 764.

■ In the case at bar, the trial court's order finally determined the producers' right to set off or retain earned commissions from premiums held in the trust fund account that had been collected on behalf of State Security prior to the liquidation on June 16, 1993. The verified accounts that the producers were required to file merely documented the status of the parties and were incidental to the substantive claims asserted. The fact that the court retained jurisdiction to review such accounts did not affect the finality of the court's ruling as to the rights and obligations of the parties. *Altschuler v. Altschuler*, 399 Ill. 559, 569, 78 N.E.2d 225 (1948); *Aetna Life Insurance Co. v. H.W. Stout & Associates, Inc.*, 112 Ill. App. 3d 570, 574, 445 N.E.2d 1288 (1983). Consequently, this court has jurisdiction to review the substantive issues raised by defendant.

We next consider whether the trial court correctly determined that the producers were entitled to set off the amounts of their earned commissions against premiums collected or held in premium fund trust accounts after the date of liquidation.

In granting partial summary judgment in favor of the plaintiffs, the trial court ruled that the contract clause of the United States Constitution governed the relationship of the parties, and the contractual agreements between the producers and State Security superseded the order of liquidation as well as section 206 of the Insurance Code.

■ Notwithstanding the declaration in the contract clause of the United States Constitution (U.S. Const., art. 1, § 10) that no state

may impair the obligation of contracts, it is firmly established that contract rights are always subject to the reasonable and legitimate exercise of the state's police power. *Meegan v. Village of Tinley Park*, 52 Ill. 2d 354, 357-58, 288 N.E.2d 423 (1972); *S&D Service, Inc. v. 915-925 W. Schubert Condominium Ass'n*, 132 Ill. App. 3d 1019, 1026, 478 N.E.2d 478 (1985). All contracts that are made are subject to the authority of the state to safeguard the interests of its people. *Sanelli v. Glenview State Bank*, 108 Ill. 2d 1, 23, 483 N.E.2d 226 (1985). Moreover, the insurance industry is afforded with a public interest and is subject to the control of the state in the exercise of its police powers through the Insurance Code. *City of Evanston v. Create, Inc.*, 85 Ill. 2d 101, 114, 421 N.E.2d 196 (1981).

■ Statutes that are in existence at the time a contract is executed are, in the absence of contrary language, deemed to be a part of the contract as if they were expressly incorporated therein. *Selcke v. New England Insurance Co.*, 995 F.2d 688, 689 (7th Cir. 1993); *McMahon v. Chicago Mercantile Exchange*, 221 Ill. App. 3d 935, 945, 582 N.E.2d 1313 (1991). Thus, statutes are a source of implied contract terms, which are read into all contracts. *Selcke*, 995 F.2d at 689.

■ The setoff provision currently embodied in section 206 of the Illinois Insurance Code (215 ILCS 5/206 (West 1996)) has been in existence since 1937 and, therefore, is deemed to be a part of any contract executed by the insurer and the producers after that date. *Selcke*, 995 F.2d at 689. As a result, the terms of section 206 govern the producers' rights to set off earned commissions against premiums held in the premium fund trust accounts, and the trial court erred in finding that the contract clause in the United States Constitution governed the relationship of the parties and that section 206 of the Insurance Code was superseded by the contractual agreements between the producers and State Security.

We next examine whether the trial court correctly determined that the producers were entitled to set off their commissions against funds held in the premium fund trust accounts.

■ Article XIII of the Illinois Insurance Code (215 ILCS 5/187 *et seq.* (West 1996) was designed to provide a comprehensive, orderly and efficient procedure for liquidating insurance companies while protecting the rights of interested parties. See *In re Liquidation of Security Casualty Co.*, 127 Ill. 2d 434, 447, 537 N.E.2d 775 (1989). The rationale for creating statutory procedures for liquidation of insurance companies is to provide a means of marshaling the assets of an insolvent company and distributing them under court supervision. *Fabe v. Facer Insurance Agency, Inc.*, 588 F. Supp. 1330, 1333 (C.D. Ill. 1984), *aff'd*, 773 F.2d 142 (7th Cir. 1985). Avoiding preference of

creditors is an aim of liquidation, just as it is in federal bankruptcy (*Fabe*, 588 F. Supp. at 1333-34), and liquidation statutes are intended to protect individual policyholders and other claimants without permitting certain classes of creditors to place themselves in a superior position.

Upon the entry of an order of liquidation, section 193(7) of the Illinois Insurance Code requires producers to immediately turn over to the liquidator all unearned premiums that have been collected by or on behalf of the company and all earned premiums owing the company. 215 ILCS 5/193(7) (West 1996).

Section 206 of the Illinois Insurance Code provides as follows:

> "In all cases of mutual debts or mutual credits between the [insurance] company and another person, such credits and debts shall be set off or counterclaimed and the balance only shall be allowed or paid ***
>
> * * *
>
> No set-off shall be allowed in favor of an insurance agent or broker against his account with the company, for the unearned portion of the premium on any cancelled policy, unless that policy was cancelled prior to the entry of the Order of Liquidation, and unless the unearned portion of the premium on that cancelled policy was refunded or credited to the assured *** prior to the entry of the Order of Liquidation." 215 ILCS 5/206 (West 1996).

On appeal, the liquidator challenges the trial court's grant of partial summary judgment in favor of the producers, contending that the language of this section precludes a setoff of the earned premiums that had not been credited prior to the date of liquidation because, after the declaration of insolvency, there is no mutuality between the parties. In support of this contention, the liquidator asserts that a fiduciary is prohibited from exercising the right of setoff against funds entrusted to him on the ground that these funds belong to the debtor and that it would be unfair for the fiduciary to abuse his position of trust to gain an advantage over other creditors.

Thus, resolution of this dispute centers upon the determination of whether there is "mutuality" in the debts and credits that results from the insurance transactions executed by the insurer and the producers. The term "mutuality" has been defined to mean contemporaneous and in the same capacity. *Stamp v. Insurance Co. of North America*, 908 F.2d 1375, 1379 (7th Cir. 1990); *Boston & Maine Corp. v. Chicago Pacific Corp.*, 785 F.2d 562, 566 (7th Cir. 1986). Courts strictly construe mutuality to ensure that a debtor's claim in one capacity is not set off against a claim asserted by the party in a different capacity. *In re Lakeside Community Hospital*, 151 B.R. 887, 891 (N.D. Ill.

1993). Where the liability of the party claiming the right to set off arises from a fiduciary duty or is in the nature of a trust, the requisite mutuality of debts or credits does not exist. *In re Ross-Viking Merchandise Corp.*, 151 B.R. 71, 73 (Bankr. S.D.N.Y. 1993).

■ In the case at bar, all money received by a producer for selling or renewing insurance policies was held by the producer in a fiduciary capacity for the benefit of the insurer in a premium fund trust account. 215 ILCS 5/508.1 (West 1996); 50 Ill. Adm. Code § 3113.30(c) (1994). All premiums deposited in the premium fund trust account are considered to be the property of the insurance company unless lawfully withdrawn. 50 Ill. Adm. Code § 3113.40(g) (1994). Thus, the producers acted as fiduciaries in holding the collected premiums in trust for the benefit of the insolvent insurer. Therefore, there could be no mutuality between those funds and the producers' contractual rights to collect earned commissions. Accordingly, the absence of mutuality prohibits the producers from setting off the amount of their contractual right to commissions against the funds held by them, in a fiduciary capacity, in trust for the benefit of State Security. To hold otherwise would allow the producers to invade the premium fund trust accounts as a means of ensuring that they receive the full amount of their commissions from the insolvent insurer to the detriment of all other creditors. Such a result would clearly be contrary to the legislative mandate of avoiding preferences.

For the forgoing reasons, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

QUINN, J., concurs.

PRESIDING JUSTICE GREIMAN, specially concurring in part and dissenting in part:

I agree with the majority's observations with respect to the contract clause in the United States Constitution, but believe that the Illinois statutes vary the meaning of "mutuality" as a condition for the right of setoff.

The elements of mutuality are often repeated in the decisions of the bankruptcy and state courts. See *Turner v. Small Business Administration*, 59 F.3d 1041 (10th Cir. 1995); *In re Lopes*, 197 B.R. 15 (Bankr. D.R.I. 1996); *In re County of Orange*, 183 B.R. 609 (Bankr. C.D. Cal. 1995); *Stamp v. Insurance Co. of North America*, 908 F.2d

1375 (7th Cir. 1990); *In re Knedlik*, 192 B.R. 559 (Bankr. D. Kan. 1995); *Westamerica Bank v. United States of America*, 178 B.R. 493 (N.D. Cal. 1995); *In re Medina*, 177 B.R. 335 (Bankr. D. Or. 1994); *In re Pyramid Industries, Inc.*, 170 B.R. 974 (Bankr. N.D. Ill. 1994); *In re Ross-Viking Merchandise Corp.*, 151 B.R. 71 (Bankr. S.D.N.Y. 1993); *In re Lakeside Community Hospital*, 151 B.R. 887 (N.D. Ill. 1993); *Fabe v. Facer Insurance Agency, Inc.*, 773 F.2d 142 (7th Cir. 1985); *Ducker v. Lohrey*, 33 B.R. 973 (Bankr. S.D. Ohio 1983).

However, the right of setoff was also founded in equitable principles. See *Turner*, 59 F.3d 1041; *Ducker*, 33 B.R. 973.

I would consider the Illinois statutory scheme with both of these observations in mind. Moreover, I would give effect to all of the provisions of the Insurance Code and assume, as I am so obliged, that our General Assembly did not intend that certain sections of the Code be ignored.

Section 206 of the Insurance Code provides for the setoff of mutual debts and further states that unearned premiums shall not be the subject of such setoffs. 215 ILCS 5/206 (West 1996). Section 508.1 of the Code requires that all premiums collected be placed in a trust account, safe from the creditors of the insurance producer. 215 ILCS 5/508.1 (West 1996). In the instant appeal, the insurance producer only seeks to set off "earned" premiums.

Why would the legislature make a distinction between earned and unearned premiums in section 206? Surely, it is aware that all premiums collected are required to be placed in a trust account. Accordingly, there would be no need to distinguish the two classifications since setoff of both would be prohibited by reason of the fiduciary capacity in which the insurance producer served by reason of section 508.1, thus creating the lack of mutuality that the majority recognizes. Why the need to address "unearned premiums" in a separate paragraph in section 206?

Since we are required to give effect to all of the language of any statute, we can assume that the legislature meant to make a real distinction and that, without that language, the legislature thought that both earned and unearned premiums might be set off. But section 508.1 creating the trust accounts would make both types of premiums beyond the right of setoff because of the lack of mutuality. We must construe both of these sections *in pari materia* to provide the meaningful statutory scheme envisioned by our legislature to protect the consumer public and allow fairness between the insurance carriers and the insurance providers.

Courts have been willing to waive the issue of mutuality. In *Ducker*, the debtor rather than the creditor was a fiduciary as a mat-

ter of law and had sold property belonging to the creditor for which the creditor received no credit, although one of the parties was clearly a fiduciary. The court concluded that there might be exceptions to the general rule that setoff is unavailable where the parties lack the necessary element of mutuality.

The *Ducker* court stated:

> "Although formal logic may dictate that setoff be denied either party, where inconsistent relations are found to exist, We have no difficulty in finding that, in the instant case, such a denial of setoff would plainly exalt form over substance." (Emphasis omitted.) *Ducker*, 33 B.R. at 976-77.

Moreover, the case upon which the majority relies, *Fabe v. Facer Insurance Agency, Inc.*, 588 F. Supp. 1330, 1333 (C.D. Ill. 1984)[1] , is inapposite since its focus was upon the lack of mutuality with respect to *unearned* commissions.

Plaintiff in the instant appeal does not seek unearned commissions or earned and unearned collected premiums but rather limits its requests to earned commissions to which the cases cited do not appear to respond.

The majority also relies upon the language of a regulation adopted by the Department of Insurance and cites section 3113.40(g) of the Illinois Administrative Code for the proposition that: "[a]ll monies deposited into a PFTA [(Premium Fund Trust Account)] are considered to be fiduciary funds until lawfully withdrawn." 50 Ill. Adm. Code § 3113.40(g) (1994). Reading on, however, section 3113.40(h)(3) provides that commissions due the producer may be lawfully withdrawn from the PFTA. Again, I must ask why the legislature, being aware of the issue of mutuality, and the Director of Insurance, who understands that portions of the regulation may be in conflict, would be so obscure when it would be so easy to state that obligations may not be set off from the PFTA after an order of liquidation? .

Accordingly, I would allow a setoff for such earned commissions.

---

[1]The majority opinion cites only the district court opinion; however, this case was appealed to the Seventh Circuit Court of Appeals and is cited at *Fabe*, 773 F.2d 142.